**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN and MELANIE SMITH, h/w, : and DOLORES SMITH : : Plaintiffs, : : v. : : CAVALIER BUILDERS, INC., : CREST HOMES, JOHN H. DATZ, : P.E., JOHN H. DATZ, LEE MILLS,: MICHAEL JESS EXCAVATING a/k/a : MICHAEL JESS, LLC, MICHAEL : JESS, JOHN DOES 1-10, ABC : CORPS.,1-10. : : Defendants. : | Civil Action No. 06-227 (NLH) **OPINION** |

**Appearances:**

ROY D. RUGGIERO
EARP COHN, PC
20 BRACE ROAD
4TH FLOOR
CHERRY HILL, NJ 08034
*Attorney for Brian Smith, Melanie Smith and Dolores Smith*

JOHN C. EASTLACK, JR.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, PC
66 EUCLID STREET
PO BOX 358
WOODBURY, NJ 08096
*Attorney for Cavalier Builders, Inc. and Lee Mills*

KEVIN M. MCKEON
NICHOLAS KIERNIESKY
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST, SUITE 300
CHERRY HILL, NJ 08002
*Attorneys for Crest Homes (CMH Manufacturing, Inc. d/b/a Crest Homes, Inc.)*

MARK B. SHOEMAKER
WARD SHOEMAKER LLC
36 EUCLID STREET, P.O. BOX 685
WOODBURY, NJ 08096
*Attorney for John H. Datz, P.E., and John H. Datz, individually*

LOUIS D. FLETCHER
26 NEWTON AVENUE, P.O. BOX 844
WOODBURY, NJ 08096
*Attorney for Michael Jess Excavating a/k/a Michael Jess, LLC and Michael Jess, individually*

**HILLMAN, District Judge**

Before the Court is defendant Crest Homes's[1] motion for summary judgment.  Plaintiffs did not file an opposition to the motion.[2]  Therefore we rely on plaintiffs' allegations in their complaint as well as the unopposed facts in Crest Homes's motion. For reasons explained below, Crest Homes's motion is granted. The dismissal is based in large part on plaintiffs' failure to file any opposition and plead facts that, if true, could support their claims.  See Fed.R.Civ.P. 56(e) (stating that if the party opposing summary judgment does not respond, "... summary judgment should, if appropriate, be entered against that party."). Nonetheless, each of plaintiffs' claims are addressed separately below.  See Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)(finding that movant is not automatically

---

[1]  Defendant states that the name "Crest Homes" was formerly a trademark of HBOS Manufacturing LP and now identifies itself in these proceedings as "CMH Manufacturing, Inc. d/b/a Crest Homes, Inc."

[2]  By Order entered March 1, 2007, the discovery deadline was extended to April 30, 2007, and dispositive motions were due August 1, 2007.  Crest Homes timely filed its motion for summary judgment.

entitled to summary judgment simply because the non-movant fails to oppose motion).

## I.  INTRODUCTION

This cases arises out of a dispute over the building of a modular home in Mullica Hill, New Jersey (the "Property").  On or about November 22, 2002, plaintiffs Brian and Melanie Smith entered into a contract with Cavalier Builders, Inc. ("Cavalier") for the construction of a single family residence (the "Contract").  Cavalier ordered the modular home from defendant Crest Homes.[3]  Although Crest Homes was not a party or signatory to the Contract, a written statement of its manufacturer limited warranty was included as an exhibit to the Contract.

Plaintiffs allege that they were induced into entering the Contract upon the written and oral representations of defendants Cavalier, Crest Homes and Lee Mills.  They allege that the Property has serious defects and is unmerchantable and unfit or has lower quality materials than represented would be used. Plaintiffs also allege that Cavalier, Crest Homes and Lee Mills violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. by fraudulently misleading plaintiffs regarding the materials and fixtures used and the design, construction and sale of the Property, including repeatedly failing to repair numerous

---

[3]  Since the motion before us was filed only by Crest Homes, we recite only those facts pertinent to plaintiffs' claims against Crest Homes.

"punch list" items and concealing numerous defects such as mold in the Property.  Plaintiffs also charge Crest Homes with racketeering under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, breach of the New Jersey New Home Warranty and Builders Registration Act, N.J.S.A. 46:3B-1, et seq., conspiracy under N.J.S.A. 2C:41-2, conversion, unjust enrichment, and theft.

## II.  JURISDICTION

Plaintiffs have alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

4

248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>See</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.  Bankruptcy of Oakwood Homes Corp.**

Crest Homes states that it operated as a trademark of HBOS Manufacturing, LP ("HBOS").  The general partner in HBOS was

Oakwood Mobile Homes, Inc.  On November 15, 2002, Oakwood Homes
Corporation and its related entities voluntarily filed for relief
under Chapter 11 of the Bankruptcy Code.  On or about November
24, 2003, HBOS along with several other companies entered into an
asset purchase agreement ("APA") with purchaser Clayton Homes,
Inc. ("Clayton").  Apparently one of the assets sold to Clayton
in that deal was the manufacturing plant where the Smith's
modular home was built.  Clayton then sold that plant to CMH
Manufacturing, Inc. ("CMH") by sale agreement dated April 13,
2004.  Crest Homes has identified itself in these proceedings as
CMH Manufacturing, Inc., d/b/a/ Crest Homes, Inc.

Crest Homes states that CMH invokes the discharge injunction
granted by 11 U.S.C. § 524(a) because the claims alleged in
plaintiffs' complaint were discharged.  "Under the Bankruptcy
Code, a discharge acts as 'an injunction against the commencement
or continuation of an action, the employment of process, or an
act, to collect, recover or offset any such debt as a personal
liability of the debtor.'" In re Browne, 358 B.R. 139, 142
(Bankr. D.N.J. 2006) (quoting 11 U.S.C. § 524(a)(2)).  "The 'such
debt' referred to is any debt discharged under section
727(b)-that is all debts that arose before the petition."  Id.

Based on the record provided by Crest Homes, it is not clear
that Crest Homes d/b/a CMH Manufacturing, Inc. is a "debtor" and
part of the Bankruptcy reorganization plan currently pending

before the Delaware Bankruptcy Court concerning Oakwood Homes Corporation and, therefore, entitled to the protections under 11 U.S.C. § 524(a).  In addition, it is not clear that the debt arose before the bankruptcy petition was filed.  The Smiths signed the contract with Cavalier a few days before the petition was filed, but Cavalier did not purchase the modular home from Crest Homes until February 17, 2004.

The record is incomplete at this time to rule that Crest Homes is entitled to the discharge protections under 11 U.S.C. § 524(a).  This is not to say that Crest Homes does not come under its provisions; only that its motion for summary judgment does not supply the Court with an adequate record upon which to make that determination at this time.[4]  Therefore, we deny Crest Homes's request to bar plaintiffs' claims on that ground.

**C.  Remedy under Limited Warranty**

In concert with its argument that it is entitled to the bankruptcy discharge, Crest Homes states that the only claims that fall outside of the bankruptcy are the limited warranty and Crest Homes's obligation to repair or replace defective parts.  The limited warranty attached to the contract between the Smiths and Cavalier provides that Crest Homes warrants to the purchaser

---

[4]  Normally, the Court would request a hearing or supplemental briefing to determine this issue.  However, as discussed infra, there appears to be no facts in the record to support plaintiffs' claims against Crest Homes so we grant summary judgment on the merits.

for a period of one year from the date of purchase that the housing structure shall be free of substantial defects in materials and workmanship attributable to Crest Homes.  It also provides that Crest Homes will remedy substantial defects in materials and workmanship and shall elect to remedy the defect by repair or replacement.

In their complaint, plaintiffs allege that the Property has serious defects and is unmerchantable and unfit or has lower quality materials than represented would be used.  They also allege that defendants Cavalier, Crest Homes and Lee Mills repeatedly failed to repair numerous "punch list" items and concealed numerous defects such as mold in the Property.

In its motion for summary judgment, Crest Homes states that on October 25, 2006, it requested that it be permitted an opportunity to repair the defects pursuant to the terms of the warranty.[5]  Crest Homes states that they sent a second letter dated December 12, 2006, in which counsel for Crest Homes states that following a conference before the Magistrate Judge plaintiffs agreed to permit Crest Homes to make the necessary repairs covered under the warranty and stated that work on the home could begin after the new year.  Copies of the October 25, 2006 and December 12, 2006 letters were attached to Crest Homes's

---

[5]  What defects needed repair by Crest Homes is not part of the record.

motion.  Crest Homes states that it did not receive a response to either letter.

Under New Jersey law, in cases where the seller has limited the warranty to the repair or replacement of any defects, "... before the exclusive remedy is considered to have failed in its essential purpose, the seller must be given an opportunity to repair or replace the product." BOC Group, Inc. v. Chevron Chemical Co., LLC, 819 A.2d 431, 438 (N.J.Super.A.D. 2003) (citing Palmucci v. Brunswick Corp., 710 A.2d 1045 (N.J.Super. A.D. 1998); Gen. Motors Acceptance Corp. v. Jankowitz, 523 A.2d 695 (N.J.Super. A.D. 1987)).  "A remedy may also fail of its essential purpose if, 'after numerous attempts to repair,' the product does not operate free of defects." Id. (quoting Gen. Motors Acceptance Corp., 523 A.2d at 703; citing Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085-86 (3d Cir. 1980)).

Here, Crest Homes argues that plaintiffs never gave it an opportunity to repair the defects.  The letters sent by its counsel clearly state that Crest Homes intended to attempt repairs on the house.  Plaintiffs never responded to Crest Homes's motion for summary judgment and there are no allegations in their complaint that could possibly raise an issue of material of fact.  See Anderson, 477 U.S. at 256-57 (finding that to withstand a  supported motion for summary judgment, the nonmoving

9

party must identify specific facts and affirmative evidence that
contradict those offered by the moving party).  In addition, the
allegations in the complaint that the Property has serious
defects and that defendants failed to repair numerous "punch
list" items and defects such as mold is not directed specifically
at Crest Homes but at Cavalier, Crest Homes and Lee Mills.  Aside
from being unsupported allegations and, therefore, unable to
withstand summary judgment, such allegations are vague and not
specific to the moving defendant, Crest Homes.  See Saldana, 260
F.3d at 232 (stating that a party opposing summary judgment must
do more than just rest upon mere allegations, general denials, or
vague statements).  Therefore, plaintiffs have not produced facts
that could support a finding that Crest Homes's limited warranty
failed of its essential purpose.

**D.  Breach of Contract**

Crest Homes argues that there was no contract between it and
plaintiffs.  Plaintiffs have provided no argument that Crest
Homes, a non-signatory to the contract but whose limited warranty
was attached as an exhibit to the contract, can be liable for
breach of the contract terms.  There are not sufficient facts in
the record to support the elements of a breach of contract claim
against Crest Homes.  See Ford Motor Co. v. Edgewood Properties,
Inc., No. 06-1278, 06-4266, 2007 WL 4526594, at *16 (D.N.J. Dec.
18, 2007)(listing the required elements of a breach of contract

claim to be "mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization.") (citations omitted).  Also plaintiffs' claim for breach of contract lumps together defendants Cavalier, Crest Homes and Lee Mills so that it is not clear what allegations are specific to Crest Homes.[6]  Therefore, plaintiffs have not plead facts that if true could allow a fact finder to find in their favor and their claim for breach of contract against Crest Homes is dismissed.

**E.  New Jersey Consumer Fraud Act**

Plaintiffs allege in their complaint that defendants Cavalier, Crest Homes and Lee Mills knowingly or recklessly repeatedly failed to correct numerous "punch list" items and tried to conceal mold growing in four of the rooms of the Property in violation of the New Jersey Consumer Fraud Act ("CFA").

The CFA states in relevant part:

> The act, use or employment by any person of
> any unconscionable commercial practice,
> deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing,
> concealment, suppression, or omission of any
> material fact with intent that others rely

_____

[6]  There are also no facts in the record to suggest that an "implied-in-fact contract" may have existed between plaintiffs and Crest Homes. See R.J. Longo Const. Co., Inc. v. Transit America, 921 F.Supp. 1295, 1306 (D.N.J. 1996)(stating that an implied-in-fact contract "is in legal effect an express contract, and varies from the latter only insofar as the parties' agreement and assent thereto have been manifested by conduct instead of words." (citations omitted).

> upon such concealment, suppression or
> omission, in connection with the sale or
> advertisement of any merchandise or real
> estate, or with the subsequent performance of
> such person as aforesaid, whether or not any
> person has in fact been misled, deceived or
> damaged thereby, is declared to be an
> unlawful practice;

N.J.S.A. 56:8-2.

The New Jersey courts recognize three categories of violations under the CFA: (1) "An affirmative misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive...;" (2) "An omission or failure to disclose a material fact, if accompanied by knowledge and intent...;" and (3) "... violations of specific regulations promulgated under the [CFA]." Monogram Credit Card Bank of Georgia v. Tennesen, 914 A.2d 847, 853 (N.J.Super.A.D. 2007)(citations omitted).

The first category, affirmative acts, does not require intent. See Vagias v. Woodmont Properties, L.L.C., 894 A.2d 68, 71 (N.J.Super.A.D. 2006).  The second category, acts of omission, requires that the act be done knowingly or with intent.  Id. Based on the allegations in plaintiffs' complaint, it appears that they are pursuing their claims under the first and second categories.

Plaintiffs' allegations do not rise to the level of a consumer fraud claim.  The failure of defendants to remedy the items on the "punch list" is not a fraudulent act; there is no allegation that defendants deceived plaintiffs about the "punch

12

list" only that they failed to repair the items.  The allegation that defendants tried to conceal mold in the four rooms could be grounds for a consumer fraud claim.  However, Crest Homes has denied that it tried to conceal mold and plaintiffs have not provided any facts in support of their claim.  See Anderson 477 U.S. at 256-57 (finding that to withstand a  supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party).  In addition, the allegations in the complaint are directed at three defendants, not just Crest Homes, so it is unclear what acts are attributable to Crest Homes.  Given that we only have Crest Homes's unopposed motion, we find that plaintiffs have plead no facts upon which a fact finder could reasonably conclude that Crest Homes violated the CFA.

### F.   Common Law Fraud

Plaintiffs allege that defendants fraudulently and knowingly concealed material facts with the intent that plaintiffs would rely on their false statements.  Crest Homes argues that it did not enter into a contract with plaintiffs and did not make any representations other than the express limited warranty.  Within the warranty, Crest Homes argues that the only representations it made was that it would elect to repair or replace any defects, but otherwise expressly disclaimed any other warranty of any kind.  Crest Homes maintains that it has attempted to repair or

replace the alleged defects but has been denied the opportunity to do so.

"In order to succeed in an action for common law fraud, a plaintiff must show: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" <u>Flores v. Murray</u>, No. L-769-05, 2007 WL 3034512, at *11 (N.J.Super.A.D. Oct. 19, 2007) (citing <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (1997)).  The elements for fraud "must be proven by clear and convincing evidence."  <u>Id.</u> (citing <u>Simpson v. Widger</u>, 709 A.2d 1366 (N.J.Super.A.D. 1998)).

With regard to their common law fraud claim, plaintiff provides no facts in support of this claim and no opposition to Crest Homes's motion for summary judgment.  <u>See</u> <u>Anderson</u> 477 U.S. at 256-57 (finding that to withstand a  supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party).  Therefore, plaintiffs' claim of common law fraud is dismissed against Crest Homes.

## G. New Jersey New Home Warranty and Builders Registration Act

Plaintiffs allege in their complaint that defendants have violated the New Home Warranty and Builders Registration Act,

14

N.J.S.A. 46:3B-1 (the "Warranty Act").  The Warranty Act, however, does not provide a cause of action.  Rather, it is a statute that "... establishes a program requiring that newly constructed homes conform with certain construction and quality standards and provides buyers of new homes with insurance-backed warranty protection in the event such standards are not met." N.J.S.A. 46:3B-7.1.  The homeowner can either elect to go forward with the arbitration program provided for under the Warranty Act or file a lawsuit.  See Rzepiennik v. U.S. Home Corp., 534 A.2d 89, 92 (N.J.Super.A.D. 1987) (stating that "the initiation of the arbitration procedures provided in these Rules shall constitute an election which shall bar the homeowner from all other remedies, as provided by New Jersey law.").

     The Warranty Act clearly states,

          Nothing contained herein shall affect other
          rights and remedies available to the owner.
          The owner shall have the opportunity to
          pursue any remedy legally available to the
          owner.  However, initiation of procedures to
          enforce a remedy shall constitute an election
          which shall bar the owner from all other
          remedies.  Nothing contained herein shall be
          deemed to limit the owner's right of appeal
          as applicable to the remedy elected.

N.J.S.A. 46:3B-9.

     Here, plaintiffs elected to bring a lawsuit.  There is no cause of action for violations of the Warranty Act.  Thus, this "claim" is dismissed.

15

## H.  Federal RICO Claim

Plaintiffs allege against all defendants that they were part of a scheme to deprive plaintiffs of their property and funds and "... conspired to conduct the business of Cavalier Builders, Crest Homes and/or other entities which they controlled or operated as a means to further an enterprise engaged in acts of racketeering activity, including but not limited to: theft of Plaintiff's [sic] property and monies; false representations by wire, mail and telephone to deceive Plaintiffs into purchasing goods and services from Cavalier Builders and Crest Homes, bribery/extortion of Plaintiffs for monies based on false representations concerning the business of Cavalier Builders and Crest Homes and its subcontractors; falsification of documents to third parties and Plaintiffs; and misrepresentations about Plaintiffs and Defendants concerning the project."

"To allege a RICO claim, the plaintiff must plead [the following four elements:] (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, [plus an] injury to property or business."  In re Ins. Brokerage Antitrust Litigation, Nos. 04-5184 and 05-1079, 2007 WL 1062980, at *5 (D.N.J. Apr. 05, 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) and Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985), cert. denied, 543 U.S. 918 (2004)).  "The term 'racketeering activity' refers to the list of enumerated federal

16

and state crimes provided in § 1961(1) of the RICO statute and
includes, inter alia, mail fraud and wire fraud." <u>Id.</u> (citing 18
U.S.C. § 1341 (mail fraud), § 1343 (wire fraud) and § 1346
(scheme or artifice to defraud)).

Plaintiffs have provided no facts that could support a claim
of mail or wire fraud activity, or other alleged racketeering
activity by Crest Homes.  Crest Homes argues that they make
modular homes which are genuine products sold to customers
through independent companies such as Cavalier.  The basis of
plaintiffs' complaint is that there were substantial defects in
the modular home.  There are no allegations or facts presented
that could support a RICO claim against Crest Homes.  Thus,
plaintiffs' RICO claim is dismissed against Crest Homes.

### I.   Conspiracy Under New Jersey's Racketeering Statute

Plaintiffs also allege that the conduct of all defendants
constitutes a pattern of racketeering activity as defined under
New Jersey's racketeering statute, N.J.S.A. 2C:41-1, and that
defendants conspired to conduct the business of Cavalier Builders
and Crest Homes and/or other entities to further an enterprise
engaged in the acts of racketeering.

New Jersey's Racketeer Influenced and Corrupt Organizations
Act provides in pertinent part:

> It shall be unlawful for any person who has
> received any income or derived, directly or
> indirectly from a pattern of racketeering
> activity ... to use or invest, directly or

> indirectly, any part of the income, or the
> proceeds of the income, in acquisition of any
> interest in, or the establishment or
> operation of any enterprise which is engaged
> in or the activities of which affect trade or
> commerce....

N.J.S.A. 2C:41-2(a).

"The Act defines 'racketeering activity' as any one of the criminal offenses enumerated in N.J.S.A. 2C:41-1a(1), including ... all crimes defined in chapter 21 of Title 2C." Winslow v. Corporate Express, Inc., 834 A.2d 1037, 1046 (N.J.Super.A.D. 2003) (citing N.J.S.A. 2C:41-1a(1)(o)).

Plaintiff has not provided any facts that could support any of the enumerated criminal offenses under N.J.S.A. 2C:41-1a(1), nor a claim of conspiracy. Similar to plaintiffs' Federal RICO claim, Crest Homes argues that they make modular homes which are genuine products sold to customers through independent companies such as Cavalier. The basis of plaintiffs' complaint is that there were substantial defects in the modular home. As such, there are no facts in the record that could support a RICO claim and plaintiffs' claim against Crest Homes is dismissed.

### J.   Conversion

Plaintiffs allege that all defendants have in their possession items that rightfully belong to plaintiffs such as "... monies, property, designs, diagrams, drawings, equipment, warranty information and other materials which they physically removed from the premises of Plaintiffs and/or wrongfully

18

acquired from Plaintiffs."

"Conversion consists of the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights."  Sun Coast Merchandise Corp. v. Myron Corp., 922 A.2d 782, 800 (N.J.Super.A.D. 2007) (citing Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds, 833 A.2d 633 (N.J.Super.A.D. 2003); Commercial Ins. Co. of Newark v. Apgar, 267 A.2d 559 (N.J.Super.L.D. 1970)).

Plaintiffs have alleged that the items rightfully belonged to them and were wrongfully taken by defendants.  Crest Homes states in its motion that it has no goods that belong to plaintiffs and has converted nothing.  Since plaintiffs provide no facts in support of their claim of conversion, it is dismissed as to Crest Homes.  See  Anderson, 477 U.S. at 256-57 (stating that to withstand summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party).

**K.  Unjust Enrichment**

In their complaint, plaintiffs allege that all defendants have been unjustly enriched as a result of their wrongful acts.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). "The unjust enrichment doctrine

19

requires that plaintiff show that it expected remuneration from
the defendant at the time it performed or conferred a benefit on
defendant and that the failure of remuneration enriched defendant
beyond its contractual rights." Id.   "[R]ecovery based on a
quasi-contract theory is mutually exclusive of a recovery based
on a contract theory. Id. (citing Caputo v. Nice-Pak Prods.,
Inc., 300 N.J.Super. 498, 507 (App.Div.), cert. denied, 151 N.J.
463 (1997)).

    Crest Homes argues that plaintiffs did not confer a benefit
upon them which required remuneration and that plaintiffs have no
good faith basis for claiming that they expected remuneration.
Since plaintiffs provide no facts that could support their claim
of unjust enrichment, it is dismissed as to Crest Homes.  See
Anderson, 477 U.S. at 256-57 (stating that to withstand a
properly supported motion for summary judgment, the nonmoving
party must identify specific facts and affirmative evidence that
contradict those offered by the moving party).

    **L.  Theft**

    Plaintiffs allege in their complaint that all defendants
intended the taking of the Property and unlawfully have
possession of the Property, including monies in violation of
N.J.S.A. 2C:20-20 et seq.  That section states:

            a. Any person damaged in his business or
            property by reason of a violation of section
            7 of this amendatory and supplementary act
            may sue therefor in any appropriate court and

20

shall recover threefold any damages he
sustains and the cost of the suit, including
a reasonable attorney's fee, costs of
investigation and litigation.

b. (1) All persons who have possessed or
obtained control of stolen property are
liable as principals and may be sued jointly
or severally, whether or not possession or
control was joint.

(2) Any person held liable for possession or control of
stolen property under chapter 20 of Title 2C of the New Jersey
Statutes shall have standing to bring a civil action for
contribution from any person who possessed or exercised control
over the stolen property and who knew, had reason to know, or was
reckless with regard to the risk that it was stolen.

c. Any action for damages under chapter 20 of
Title 2C of the New Jersey Statutes shall be
maintained in the Superior Court sitting
without a jury.

Section 7 of the Act referred to in N.J.S.A. 2C:20-20(a)

pertains to criminal possession of altered property or the

receiving of stolen property. See N.J.S.A. 2C:20-7.1. Crest

Homes argues that plaintiffs do not and cannot hold Crest Homes

liable under this statute. It states that it made a modular home

and did not engage in receiving stolen property. Since

plaintiffs provide no facts that could support their claim of

theft, it is dismissed as to Crest Homes. See Anderson, 477 U.S.

at 256-57 (stating that to withstand summary judgment, the

nonmoving party must identify specific facts and affirmative

evidence that contradict those offered by the moving party).

## IV.  CONCLUSION

For the foregoing reasons, Crest Homes's motion for summary

judgment is granted.  An Order consistent with this Opinion will

be entered.

                                  s/Noel L. Hillman
                                 NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey